UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BRAVADO INTERNATIONAL GROUP
MERCHANDISING SERVICES, INC.

    Plaintiff,

v.

JOHN DOES 1-100; JANE DOES 1-100;
and XYZ COMPANY,

    Defendants.

20-CV-113
DECISION AND ORDER

The plaintiff, Bravado International Group Merchandising Services, Inc. ("Bravado"), is the exclusive licensee for merchandise for the band KISS. Docket Item 8-3 ¶ 2. On January 29, 2020, Bravado filed a complaint alleging that the defendants—unnamed "bootleggers"—will infringe KISS's trademarks and violate the Lanham Act during KISS's upcoming concert tour, which will begin on February 5, 2020, at the Key Bank Center in Buffalo, New York. Docket Item 1. Bravado also filed a motion seeking (1) a temporary restraining order ("TRO") preventing the "bootleggers" from selling counterfeit merchandise on the tour; (2) a seizure order authorizing federal and local authorities to seize infringing merchandise; and (3) an order directing the defendants to show cause why a preliminary nationwide injunction should not issue. Docket Item 8. This Court heard oral argument on Bravado's motion on January 30, 2020, and reserved decision. Docket Item 11.[1]

---

[1] The Court also ordered Bravado to submit a list of district courts that have denied similar requests, which it did on January 31, 2020. Docket Item 12.

## DISCUSSION

The Lanham Act provides that

> with respect to a violation that consists of using a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services, the court may, upon ex parte application, grant an order . . . pursuant to this subsection providing for the seizure of goods and counterfeit marks involved in such violation and the means of making such marks, and records documenting the manufacture, sale, or receipt of things involved in such violation.

15 U.S.C. § 1116(d)(1)(A). The Act cautions, however, that "[t]he court shall not grant such an application unless," among other things,

> the court finds that it *clearly appears from specific facts* that . . . an order other than an ex parte seizure order is not adequate to achieve the purposes of section 1114 of this title; . . . the applicant is likely to succeed in showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services; . . . an immediate and irreparable injury will occur if such seizure is not ordered; . . . [and] the person against whom seizure would be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person.

*Id.* § 1116(d)(4)(B) (emphasis added). Similarly, Federal Rule of Civil Procedure 65 permits a court to issue an ex parte TRO only if:

> (A) *specific facts* in an affidavit or a verified complaint *clearly show* that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

2

Here, Bravado states that it will be imminently and irreparably harmed without an ex parte TRO and seizure order because "[t]ours by [KISS] and other performers of their stature have recurring problems with individuals who sell infringing Tour Merchandise near, at, and sometime[s] inside each concert venue." Docket Item 8-3 ¶ 8. More specifically, "[o]n every major prior tour by [KISS] as well as every prior tour by performers of [KISS's] caliber and following . . . , Defendant Bootleggers have appeared selling their unlawful goods from the very beginning of a tour." *Id.* ¶ 9; *see also* Docket Item 8-7 ¶ 20 ("Defendant Bootleggers have appeared on prior tours by [KISS] and similarly situated popular performers from the beginning of the tours, and will continue to appear at every stop.").

Moreover, Bravado avers, "there is no other means of preventing the [d]efendants from destroying [Bravado's] legitimate business interests without an ex parte seizure order." Docket Item 8-2 at 15. According to Bravado, "[e]ven if [the d]efendants received notice and were served with a proposed temporary restraining order, it is highly unlikely that they would voluntarily comply and not sell their goods." *Id.*

Bravado may well be correct in its prediction, based on the presence of bootleggers on all of KISS's past tours, that there will be some bootlegging activity on this tour. But that is not good enough: Bravado must present *specific* information for the Court to determine whether the bootleggers' activities *on this tour* will irreparably harm Bravado unless the Court issues the TRO. In this Court's view, Bravado's general descriptions of bootlegging activities on past KISS tours are insufficient to "clearly" demonstrate with "specific facts" that it will be irreparably harmed, as is required by the

3

Lanham Act and Rule 65. See 15 U.S.C. § 1116(d)(4)(B); Fed. R. Civ. P. 65(b)(1); see also Leidseplein Presse, B.V. v. Does, No. C16-5065 BHS, 2016 WL 337267, at *1 (W.D. Wash. Jan. 28, 2016) (finding that "at this time, Plaintiff has failed to show immediate and irreparable harm in the absence of temporary relief" because "[w]hile Plaintiff has identified bootleggers at previous shows on previous tours, the upcoming show in Tacoma is the first show of a North American tour" and "there is no particularized evidence that bootleggers will appear at this show"). For example, Bravado could present—as did the plaintiffs in SKS Merch, LLC v. Barry, 233 F.Supp.2d 841 (E.D. Ky. 2002)—"photographs depicting various persons allegedly engaged in selling bootleg merchandise" on this tour and testimony establishing that such merchandise was "inferior and misleading . . . to often unsuspecting concert attendees." See id. at 843, 848.

What is more, Bravado has not shown that "an order other than an ex parte seizure order is not adequate" to protect its interests. See 15 U.S.C. § 1116(d)(4)(B)(i); cf. SKS Merch, 233 F.Supp.2d at 843, 847 (granting ex parte TRO and seizure order where "photographs evidence[d] Plaintiffs' ongoing but ultimately futile efforts to identify and stop the bootleg vendors" and "testimony established that, in several jurisdictions, law enforcement officers expressly stated that no action would be taken against the bootleg vendors absent an injunctive order from a federal court").

Finally, Bravado has not "demonstrate[d] that [it has] engaged in a reasonably diligent search to identify the unknown defendants [and] . . . inform [ ] the Court of any efforts [it has] taken to provide these individuals with constructive notice," as is required to establish jurisdiction over unnamed defendants. See Plant v. Doe, 19 F. Supp. 2d

4

1316, 1320 (S.D. Fla. 1998) (quoting *Boyd v. Arizona State Bd. of Dental Examiners*, Case No. Civ. A. 88–1560–MA, 1989 WL 37309, at *12 (D. Mass. Apr. 4, 1989)). Although Bravado has described its difficulty identifying bootleggers in the past, once again, it has not evidenced any attempt to do so *on this tour*. And while Bravado seems to suggest that the "defendant Bootleggers" are repeat offenders, it does not explain the efforts made to identify those offenders—by photographic evidence or otherwise—at past concert events, or any other efforts to discourage or use legal means to prevent the bootlegging activity before a tour begins.

The Court is sympathetic to the predicament Bravado faces in trying to curb the sale of counterfeit merchandise on the KISS tour. Moreover, the Court understands that—if Bravado ultimately can demonstrate it is entitled to a TRO—even a short delay could severely impact Bravado's ability to enforce its rights. But the Court also must be cognizant of "the rigorous standard for obtaining ex parte relief," *Live Nation Merch., Inc. v. Does*, No. CV 15-3762-GHK (EX), 2015 WL 12672733, at *2 (C.D. Cal. May 21, 2015), and on the record currently before it, the Court cannot say that Bravado has satisfied that standard.

Accordingly, the Court DENIES Bravado's motion for a TRO without prejudice to Bravado's filing a renewed motion for a TRO with specific facts about bootlegging *on this tour* that remedies the deficiencies described above.[2]

SO ORDERED.

Dated:  February 3, 2020
Buffalo, New York

Lawrence J. Vilardo
United States District Judge

---

[2] It is a close question whether the fact that bootleggers have appeared at all of KISS's prior major tours demonstrates harm that is "actual or imminent, not 'conjectural' or 'hypothetical,'" as is required for constitutional standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). In light of this Court's decision—and the fact that submissions that might remedy the deficiencies noted above also might address this issue—the Court need not decide this question now.